### TUROFF v. BURCH.
### No. 5019.

Court of Appeals of District of Columbia.

Argued Feb. 9, 1931.

Decided June 1, 1931.

ROBB, Associate Justice, dissenting.

Alfred M. Schwartz, of Washington, D. C., for appellant.

Charles W. Darr and H. Clay Espey, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellee, Agnes Burch, defendant below, was sued by the plaintiff for personal injuries sustained through the alleged negligent operation of her automobile. She owned the automobile in question, which she provided for the use and pleasure of the members of her family. On this occasion, Kenneth Burch, her son, who was in the habit of using the automobile, was not operating it at the time the accident occurred. It is alleged, in substance, that on September 25, 1926, while the automobile was being operated for the pleasure and use of the son by his friend LeRoy Stewart, Burch being seated in the automobile with him, plaintiff was struck while crossing New Hampshire avenue and seriously injured by the alleged negligent operation of the automobile.

Defendant, the owner of the automobile, testified that she had no knowledge that Stewart had ever driven the car, or that he was to accompany her son or drive the car on the present occasion. It appears that the son, on this occasion, took the car and called for Stewart, and then drove to the home of a lady friend. When he came out to the car with the lady, Stewart was sitting at the wheel, and said: "I will drive." Burch and the lady got in the front seat and they proceeded, Stewart driving, to the point where the accident occurred.

The trial justice in his charge to the jury properly eliminated all question of the direct liability of the owner for operating the car, and her liability for the operating of the car by a member of her family, since it was conceded that neither of these conditions obtained in the case.

On the question of liability for the operation of the car by Stewart, the court charged the jury: "The question then arises, was Stewart operating it with her authority?

You have all the circumstances in evidence before you; you have the history of the use of the car by her son; you have the history of the relationship between her son and Stewart, and the history of the use of the car by her son when Stewart was with him, and you have the evidence with regard to how far she knew about that matter and about using the car together. She says that she did not know that Stewart had ever driven the car. It is a question of fact then for you, considering the case, of the previous use of the car, and what knowledge the defendant had of it, whether, when Stewart was driving the car, he was doing it with her implied permission. There is no evidence that she had expressly permitted him but it is a fair question of fact upon which all the circumstances of the case, —whether she had or had not given him the implied permission to drive it. Did she understand, or ought she to have understood from the circumstances which have been detailed to you in evidence, that if it was more convenient for Stewart to drive the car at a given time than for her son to do it, her son would allow him to do it, and was she willing that that should occur? If you find so, by a fair preponderance of the evidence, then Stewart, in driving the car, simply took the place of her son in driving the car and she would be liable as much as if her son would have been driving."

In other words, the case was submitted on the question of whether or not Stewart was the agent of the owner in the operation of the car at the time the accident occurred. It becomes unnecessary for us to inquire as to the liability of the owner of a car kept for the use and pleasure of the members of his family, since the car was not being operated by a member of the family on this occasion. Neither is it necessary for us to inquire as to the liability of an owner of a car who allows the car to be used by a third person with the owner's permission, since the jury found from the evidence in this case that Stewart was not operating the car by the permission or direction of the owner.

The sole and only question left for our consideration is whether or not the owner, in permitting her son to use the car, was liable for the accident occasioned while the car was being operated by Stewart, by permission of the son without her knowledge or consent.

A few cases have come to our attention where the courts go to the extent of holding that, where a car is kept by the owner for the use and pleasure of his family, the owner is responsible for damages incurred through the negligence of a member of the family, whether the car is being driven by the member of the family or by a third party, with his permission, even though such third party is driving without the knowledge, consent, or direction, of the owner. Watts v. Lefler, 190 N. C. 722, 130 S. E. 630; Ulman v. Lindeman, 44 N. D. 36, 176 N. W. 25, 10 A. L. R. 1440; Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970; Thixton v. Palmer, 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379.

The rule upon which this extreme doctrine is based is illustrated by the facts set out in the Minnesota case, as follows: "Defendant contends that, even if he is responsible for the acts of his daughter, he is not responsible for the acts of the third party who was operating the car at the time of the accident. The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purpose for which she had taken it out. That the mere fact that the person authorized to operate the car permits another to operate it temporarily does not absolve the owner from responsibility, under such circumstances, has already been determined in Geiss v. Twin City Taxicab Co., 120 Minn. 368, 139 N. W. 611, 45 L. R. A. (N. S.) 382."

The "family purpose" doctrine which holds the owner of a car, who gives it over to the use of his family and permits it to be operated by the members thereof, liable for injuries inflicted while being operated by a member of the family, is a departure from the doctrine of master and servant, and is based on the theory that an automobile is a dangerous instrumentality; and the rule by which it is attempted in a few states to extend this liability to accidents occurring through the agency of a third party, operating the car with the permission of a member of the family, without the authority, direction, or knowledge, of the owner, has not received the indorsement of many of the courts. Indeed, the more recent tendency of the courts seems to be against the so-called "family purpose" doctrine, as indicated in a very recent Illinois case, Arkin v. Page, 287 Ill. 420, 123 N. E. 30, 5 A. L. R. 216, and in Van Blaricom v. Dodgson, 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 363.

Of course, these cases distinguish clearly a case where the member of a family is driving the father's car on an errand or in the transaction of business for the father. Un-

der those circumstances, the owner of the car is liable on ordinary principles of agency, but these questions are not in this case, and they are only cited as leading up to the extreme doctrine upheld in the Minnesota case, and which it is urged should be applied in the present case. The cases seem to be uniform in holding that the owner of a car is not liable for accidents occurring while the car is in possession of a "gratuitous bailee," provided the person to whom the car is loaned is a competent, qualified driver. 68 A. L. R. 1013; Babbitt on Motor Vehicles (3d Ed.) 1201.

We think that the extension of the "family purpose" doctrine of liability for the negligence of third persons, who have been placed in the operation of the car by the member of the family using it, and without the knowledge, permission, or direction of the owner, is not warranted by the great weight of authority. Indeed, many of the leading states refuse to adopt the "family purpose" doctrine as contrary to the common-law rule of agency, unless the member of the family operating the car is engaged in the performance of a duty for the owner.

To extend the "family purpose" rule to third persons, who are not operating the car under the immediate direction of the owner, and in the performance of his work, merely upon the theory that an automobile is a dangerous instrumentality, is to establish a rule of liability unwarranted by modern conditions. The operation and use of automobiles has become so thoroughly established in vehicular traffic and use as to forbid the application of extraordinary rules of liability merely from the fact that if recklessly used it may become a dangerous instrumentality. It has become almost the exclusive vehicle in use, both for business and pleasure, and we think there is no occasion for such a wide departure from the established rules of liability of the principal for the acts of his agent, or of the master for the acts of his servant, as is contended for in this case.

In other words, there is no reason for extending the liability beyond the well-established rule that where a servant or chauffeur is charged with the operation of the owner's car in conducting and carrying out the owner's orders, and permits a third person to temporarily operate the car, and injury is inflicted through negligent operation, the owner is held liable. This rule rests upon the well-established principle of negligence by an agent or servant in the discharge of the principal or master's duty. This was the distinction underlying the decision in the much quoted English case of Booth v. Mister, 7 Sergeant & Pettitt 66, 32 English Common Law Reports, 439. While some courts have confused the opinion of Lord Abinger in the English case with the "family purpose" doctrine, there is, in fact, no analogy whatever.

In the present case, as stated in the charge of the trial court, the whole case turns upon whether or not Stewart, while operating the car, was the agent or servant of the owner, and that depended not upon any principle involved in the "family purpose" doctrine, but on well-established principles of agency; and, unless it be shown either that Stewart was operating the car under the direction of the owner, or that the son, when he permitted Stewart to operate the car, was engaged in the owner's business, there could be no liability under any rule of agency. This issue the jury resolved in favor of the defendant.

The judgment is affirmed, with costs.

ROBB, Associate Justice (dissenting).

Published statements of insurance companies disclose that in this country during the past year more than 32,000 persons were killed, and several hundred thousand injured by automobiles. In Schweinhaut v. Flaherty, 60 App. D. C. 151, 49 F.(2d) 533, 535, decided April 6, 1931, Mr. Justice Groner, speaking for the court, observed "that conditions in this respect are growing worse rather than better." In District of Columbia v. Colts, 282 U. S. 63, 51 S. Ct. 52, 53, 75 L. Ed. 177, decided November 24, 1930, the Supreme Court declared that an automobile is, "potentially, a dangerous instrumentality." In the hands of a careless or inexperienced person, an automobile is nothing short of a public menace. Public policy, therefore, demands that owners of automobiles be held to strict accountability for any negligence resulting in injury to others.

When a parent supplies an automobile for the use of members of his family, he is liable to third persons for injuries sustained through the negligent driving of one of such members. This liability is based upon the doctrine of agency; not upon family relationship. In such circumstances the automobile is being used for the purpose for which it was kept and, hence, in the parent's business, the driver acting in furtherance of the parent's purpose. King v. Smythe, 140 Tenn. 217, 204 S. W. 296, L. R. A. 1918F, 293; Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323 (1926); Birch

v. Abercrombie, 74 Wash. 486, 133 P. 1020, 50 L. R. A. (N. S.) 59; Allison v. Bartelt, 121 Wash. 418, 209 P. 863 (1922); Denison v. McNorton (C. C. A.) 228 F. 401; Boyd v. Close, 82 Colo. 150, 257 P. 1079 (1927); Stickney v. Epstein, 100 Conn. 170, 123 A. 1 (1923); Chouinard v. Wooldridge, 102 Conn. 66, 127 A. 908 (1925); Griffin v. Russell, 144 Ga. 275, 87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994; Landry v. Oversen, 187 Iowa, 284, 174 N. W. 255; Fullerton v. U. S. Casualty Co., 184 Iowa, 219, 167 N. W. 700, 6 A. L. R. 367; Graham v. Page, 300 Ill. 40, 132 N. E. 817; Gates v. Mader, 316 Ill. 313, 147 N. E. 241; Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224; Thixton v. Palmer, 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379; Richardson v. Weiss, 152 Minn. 391, 188 N. W. 1008 (1922); Linch v. Dobson, 108 Neb. 632, 188 N. W. 227 (1922); Boes v. Howell, 24 N. M. 142, 173 P. 966, L. R. A. 1918F, 288; Watts v. Lefler, 190 N. C. 722, 130 S. E. 630 (1925); Foster v. Farra, 117 Or. 286, 243 P. 778 (1926); Mooney v. Gilreath, 124 S. C. 1, 117 S. E. 186 (1923); Way v. Guest (Tex. Civ. App. 1925) 272 S. W. 217; Cole v. Wright (Tex. Civ. App. 1929) 18 S.W.(2d) 242; Ambrose v. Young, 100 W. Va. 452, 130 S. E. 810 (1926).

In Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970, a father kept an automobile for the use of his family. A daughter, nineteen years of age, usually operated it. On the occasion of the accident, she permitted a cousin to operate the car, she being present. The court said: "The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purpose for which she had taken it out." To the same effect are Thixton v. Palmer, 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379; Ulman v. Lindeman, 44 N. D. 36, 176 N. W. 25, 10 A. L. R. 1440; Goss v. Williams, 196 N. C. 213, 145 S. E. 169.

So, here, on the occasion of the accident, the car was being driven for the purpose for which it had been taken out, and in furtherance of the mother's business. In legal contemplation, it was being driven by the son.

The suggestion that it would be a harsh rule to hold the parent under such circumstances is, in my view, without merit, and entirely overlooks the demands of public policy. If a parent finds that a member of the family is unwilling to obey instructions to permit no one not a member of the family to drive the car, the remedy is simple, i. e., withdraw permission to drive from that member of the family. Innocent third parties should not be permitted to suffer injury because of the willfulness of a member of a family. It is all very well to suggest that the injured party would have recourse against the person permitted by the member of the family to drive the car, but it is common knowledge that in many instances such a person is financially irresponsible.

The judgment should be reversed.